OPINION
Akida Muldrew appeals from a judgment of the Juvenile Court committing her to the custody of the Ohio Department of Youth Services on a finding that Muldrew is a delinquent child by reason of having committed the offense of burglary.
During late July 1998, Sylvia Camp and her daughter, Carmen, stayed at the home of Camp's other daughter, Katie, because the utilities had been shut off at Sylvia Camp's residence at 3207 Forest Grove Avenue, Dayton, Sylvia Camp frequently stopped by there during that time to make sure it was secure and to collect her mail. When Sylvia Camp left after visiting her home on July 25, 1998, the doors were locked and the windows were shut.
Around noon the following day, Sylvia Camp and her daughters Carmen and Katie returned to the home. As their car entered the driveway they saw that one of the windows was partly open. When they attempted to enter the home via the back door, they discovered that the chain lock was attached from inside.
Sylvia Camp had her daughters break down the door. Upon entering they discovered two girls asleep inside the home. Clothes were strewn about the bedroom floor, dresser drawers had been pulled out, and knives were laying out on a table.
Sylvia Camp called the police. One of the girls, Ferita Tucson, ran out the back door and escaped. The other girl, Akida Muldrew, waited for the police to arrive. Muldrew told Sylvia Camp that Ferita Tucson had pried open one of the windows and climbed inside, and then opened the front door and let Muldrew inside the home. Tucson also later allowed several boys to enter.
Sylvia Camp discovered that several articles were missing from her home. Condoms were strewn about her bedroom, burn marks were on the living room floor, and someone had urinated on a couch. The metal frame around several of the windows appeared as though someone had attempted to pry them open.
Akida Muldrew was arrested and charged with delinquency by reason of having committed burglary. Muldrew testified at trial that Tucson had said that she was house sitting for an aunt who was out of town and invited Muldrew to spend the night with her at her aunt's home. Tucson also told Muldrew that she had locked the keys to the house inside. After attempting unsuccessfully to pry open several windows, Tucson was finally able to pry open one window and gain entry by climbing through. Tucson then opened the front door for Muldrew. According to Muldrew, it occurred to her that Tucson might be breaking into that home, but she chose to believe Tucson's explanation that she had accidentally locked her keys inside. Muldrew testified that she fell asleep shortly after entering and woke up when Sylvia Camp arrived.
At the conclusion of trial the juvenile court found Muldrew to be a delinquent child by reason of having committed the offense of burglary, and it committed Muldrew to the Ohio Department of Youth Services for a minimum period of six months up to a maximum of age twenty-one. Akida Muldrew timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT ENTERED JUDGMENT OF GUILT WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"Weight" of the evidence refers to the inclination of the greater amount of the credible evidence offered in a trial to prove the issue established by the verdict that was reached.State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof. State v. Martin
(1983), 20 Ohio App.3d 172.
Akida Muldrew was found guilty of having violated R.C.2911.12 which states:
 (A) No person, by force, stealth, or deception, shall do any of the following:
. . .
 (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.
Muldrew argues that the trial court could not reasonably have found her guilty of violating R.C. 2911.12(A)(4) on the evidence before the court. Specifically, she attacks the evidence supporting the three essential elements of the offense of burglary.
First, Muldrew argues that the evidence could not support a finding that she used force, stealth, or deception to enter the house. She points to the only evidence demonstrating how she gained entry, which is her explanation that Ferita Tucson, having climbed through a window, then opened a door from inside and allowed Muldrew to pass through.
Muldrew may be correct that the method of entry to which she testified was, at least on her part, not one that employed force, stealth, or deception. However, Muldrew admitted that she saw Tucson enter through a closed window, and there was evidence that a window had been pried. The court was not required to believe Muldrew's claim that she was unaware of Tucson's criminal purposes. The court could find, instead, that Muldrew was aware of Tucson's criminal purposes, and in that regard was Tucson's accomplice in gaining entry to the house by force.
Second, Muldrew argues that the evidence could not prove that she knowingly entered or remained on the premises without privilege to do so. It is undisputed that Sylvia Camp did not authorize either girl to enter her home. However, Muldrew points to the only testimonial evidence demonstrating privilege, which was her testimony that Tucson had told Muldrew that Tucson was staying at the house at the invitation of the owner, who was her aunt.
Had the court elected to credit and believe Muldrew, it might have found that she did not knowingly enter the premises without privilege to do so. Again, however, the court was not required to believe her. Instead, the court could find that Muldrew knew that Tucson lacked any privilege to enter, based on the nature and circumstances of her method of entry. In that event, Muldrew likewise was without privilege.
Third Muldrew argues that the evidence could not prove that she knowingly entered the house when a person other than her accomplice was likely to be present. She again relies on her testimony about Tucson's explanation, as well as the hour when they entered, 8:30 a.m.
As we noted above, the court was not required to believe Muldrew. It could instead find that she knowingly entered the house when it was likely that a third person was present. Residences ordinarily are occupied, and only a likelihood need be shown. The hour of day makes that no less likely.
The thrust of Muldrew's arguments, that her conviction was against the manifest weight of the evidence because no evidence contradicting her testimony was before the court, assumes that direct and testimonial evidence has a greater weight and value than circumstantial evidence. That view was rejected in State v.Jenks, (1991), 61 Ohio St.3d 259, which held that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." Id., at 272. Further, "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others." Ibid.
The only direct and testimonial evidence before the court probative of the circumstances involved in Muldrew's entry into the house where she later was found was Muldrew's own testimony. However, the fact that she was found inside the residence belonging to another person, who had not given Muldrew permission to enter, that the owner had left the residence locked and that evidence of forcible entry was present, is circumstantial evidence which preponderates, beyond a reasonable doubt, in favor of the trial court's verdict that Muldrew had committed all the essential elements of the offense of burglary, R.C. 2911.12(A)(4).
The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Carley J. Ingram, Esq., James C. Staton, Esq., Hon. Michael B. Murphy